RUSSELL & Co., Respondents, *vs.* THE STATE INS. Co., Appellant.

1. *Fire insurance—Account of loss—Furnishing proof of—Delay, waiver of—Allegation as to.*—Where by the terms of a fire insurance policy, a particular account of the loss was to be furnished to the company within thirty days thereafter, *held,* that in suit upon the policy, plaintiff might show, without specially alleging the fact, that delay in furnishing the account beyond the thirty days occurred by reason of the acts and with the consent of the company. No special averment of waiver is necessary under the Practice Act. (Wagn. Stat., 1020, ? 42 ) And such proof of waiver is not an excuse for non-performance; but proof of performance 'within the meaning of the contract. *A fortiori,* such is the law where the company not only acquiesces in the delay, but requests that the statement of loss be made more full and exact.

2. *Instructions—Disputed facts, combination of in single instruction.*—It is only necessary to instruct a jury as to disputed facts. And the court need not combine in one instruction all the facts proper to be considered.

3. *Insurance—Leave to take other insurance—Indorsement on policy, when unnecessary.*—The object of requiring leave to take insurance in another company to be indorsed on a policy, is to give notice of the additional policy, and where the same agent represented both companies and recommended and issued the additional policy, the original company cannot set up such failure of indorsement as a defense to a suit on its policy.

*Appeal from Linn Circuit Court.*

*A. W. Mullins and G. H. Shields,* for Appellant.

I. Under an averment of performance, evidence showing an excuse for non-performance cannot be given. (Pier vs. Heinrichoffen, 52 Mo., 333 ; 4 Sandf, 665; 3 Abb. Pr., 562; 29 Iowa., 104; 12 Tex., 118; 7 Barb:, 167-71; 2 Wend.. 399 ; 8 Johns., 392; 9 Johns., 115; 3 Johns., 528, 11 N. Y., 25–33.)

II. Where insurance in a specially named company is permitted, it cannot be renewed without consent of the insurer in another company.

*G. W. Easley, with whom was G. D. Burgess,* for Respondents.

I. Defendant's waiver of time could be proved without being pleaded. (St. Louis Ins. Co. vs. Kyle, 11 Mo., 278; Martin vs. Fishing Ins. Co., 20 Pick, 389; Davis vs. N. H. Ins.

Co. 7 Cow., 462; Insurance Co. vs. Lawrence, 2 Pet., [U. S.] 25; 2 Phil. Ins., 665, § 2122.)

II. No written indorsement of consent was necessary. The essential point was that the insurer should have notice of the additional insurance. This it had through its agent, who was also agent of the other company. The company knew of the fact and consented thereto. It could not afterward reap a harvest out of its connivance and fraud. (Carrugi vs. The Atlantic Ins. Co., 40 Geor., 135; Hayward vs. Nat. Ins. Co., 52 Mo., 281; 1 Phil. Ins. 501, § 904; Nat. Ins. Co., vs. Crane, 16 Md., 260, 295.)

Napton, Judge, delivered the opinion of the court.

This suit was upon a policy of insurance, to recover the amount of $2,500, alleged to have been lost in the destruction of the premises by fire. The only allegation in the petition, about which there is any question, is the following: "That on or about the 12th day of April, 1871, the property insured by the defendant, and at that date owned by plaintiffs, was destroyed by fire, and that within thirty days thereafter, to-wit: on April 15th, 1871, plaintiffs did give notice of said loss to said company and delivered at its office in Hannibal, Mo., a particular account of said loss, as required by the terms of said policy, &c."

There was no demurrer to the petition The answer sets up various defenses, principally based on alleged fraudulent representations in regard to the value of the property, and on the fact of other policies being taken out by the assured, without the consent of defendant, and because of frauds and false swearing of the plaintiffs in regard to the amount of loss. There was a replication to the answer, denying the defenses set up in the answer. The verdict was for the plaintiffs, and a motion for a new trial and in arrest. On the trial the policy was read in evidence. One of its terms was, that no other insurance should be made, without consent of the company, indorsed on the policy.

It seems from the evidence in this case, connected with the

verdict of the jury, under instructions, that on the 10th of May, 1870, Waters, one of the plaintiffs, applied to the defendant's agent at Linneus, for $2,500 insurance on their stock of goods, and represented their value at $10,000. On that day, there was an arrangement made between D. W. Russell & Co., of which firm Waters was a member, to consolidate their stock of goods with the goods of one Halliburton, who was occupying an adjoining store-house, and to take Halliburton into the concern; and invoices of the goods were commenced on that day and completed on the 13th or 14th of May. The amount of the two invoices was $9,278.16. The policy being in the name of D. W. Russell & Co. was then, with the consent of the defendant, assigned to Russell & Co., of which said Halliburton was a member. In this policy, Russell & Co. or D. W. Russell & Co. were allowed a policy previously taken in the Phœnix Insurance Co. of St. Louis, and on the expiration of that policy, which occurred on the 14th of January, 1871, a policy to the like amount was taken in the Home Ins. Co. of New York. Shortly after the formation of the company of Russell & Co., based on the consolidation of D. W. Russell & Co. with Halliburton, they sent a stock of merchandise to Botsville, and had an insurance on that stock to the amount of $2,500 in the company now sued, and in November, 1870, they removed this stock to Linneus. They then, as it appears from the letter of Strong, the secretary, wrote to him, asking the transfer of the Botsville policy of the merchandise removed to Linneus. The secretary declined, but suggested that the plaintiffs should take a policy for $2,500 in the Aurora Ins. Co., of Illinois, of which he was also agent, and the plaintiffs acceded to this suggestion and took the policy for $2,500 in the "Aurora." On the 12th day of April, 1871, the store house of Russell & Co. was burned and the stock destroyed by the fire, and an agent of defendant, upon notice, immediately went to Linneus to inquire into the details of the loss. This agent, Cooms, at intervals continued his examination, and before it was completed the thirty days had elapsed. The proof of loss was,

however, finally forwarded, and on its reception the Secretary replied, objecting to the want of a detailed account of items of the property destroyed and the value of each article. Subsequently a corrected statement was sent to the company.

The evidence in the case related chiefly to the value of the stock in the store-house of plaintiffs, and as this was a matter for the jury it is unnecessary to be detailed.

The principal objection to the evidence was the admission of Strong's letter, dated June 14th, 1871, on the ground that no waiver as to time was pleaded and therefore no evidence of a waiver could be introduced; and the admission of a second letter purporting to come from Strong, dated Nov. 25th, 1870, which was objected to on the ground that it was not written or signed by him, as secretary of the State Ins. Co., and upon this last point the defendants proved, that it was not in his handwriting; but the plaintiffs proved that it was a letter received by them in reply to a letter addressed to the company.

The instructions given to the jury, at the instance of plaintiffs were these :

1st. If the jury believe from the evidence that the policy of the defendant had not expired at the time of the fire, and that the plaintiffs lost goods by said fire, covered by the policy, then the jury are bound to find for the plaintiffs, unless the policy has been forfeited, by some act of the plaintiffs.

2nd. If the jury believe that the defendant, after the expiration of thirty days after the fire, required the plaintiffs to furnish additional or further proof of loss, then such requirement of defendant was a waiver of the time within which said proofs were to be presented, and if the jury believe that the plaintiffs in making their proofs of loss, gave as particular an account and description of the quality and description of the goods lost, as was in their power, then such proof of loss was a substantial compliance with the conditions of the policy.

3rd. Although the jury may believe that the plaintiffs, did on the 14th January, 1871 procure from the Home Ins. Co. of

New York, a policy of $2500 covering the same goods insured by the policy here sued on, yet if the jury believe that said Home policy was taken instead of one which plaintiffs had in the Phœnix Ins. Co., and which had expired before the issuing of the Home Ins. policy and that permission was given in the policy sued on for $2,500 insurance in the Phœnix Ins. Co., then the policy here sued on can in no way be affected by the said policy in the Home Ins. Co.

4th. If the jury believe from the evidence, that J. N. Strong was the agent of defendant, and also for the Aurora Ins. Co. at the time of issuing the policies read in evidence; that the policy issued by the Phœnix Ins. Co. had expired, and that by written consent of said Aurora Co., provided in its policy, plaintiffs were permitted to take other insurance to the amount of five thousand dollars, and that plaintiffs did after the expiration of the Phœnix policy, obtain from the Home Ins. Co. of New York, the policy issued by it, read in evidence, etc., then the fact that plaintiffs obtained said policy from the Home Ins. Co. did not vitiate the policy sued on, although the written consent of defendant was not indorsed on the policy.

5th. As to the estimate of the value of the goods mentioned in the first proof of loss made by plaintiffs, the rule of is, that the over valuation, in order to ground a defense thereon and defeat the plaintiff's action, must be made by the plaintiffs fraudulently and with a design to deceive the defendant. An over-estimate of the amount of their stock or of their profits arising from the business, if made innocently and mistakenly without fraudulent intent, is no bar to the plaintiffs' recovery of the actual loss sustained by the fire.

6th. Mistakes made by plaintiffs in the description of particular articles destroyed by the fire, or in any other respect, if not intended or designed to mislead or defraud the defendant, are not material and do not make out the charge of false swearing or fraud.

7th. If the jury find for the plaintiffs, they will assess their damages at one-third of the value of the entire stock covered

by the policy sued on, provided the damages do not exceed the sum of $2,500, and to this sum the jury may add interest at the rate of 6 per cent. from and after 90 days after the proof of loss in this case.

The court also instructed the jury at the instance of defendant, giving all the instructions asked except two, which obviously conflicted with those given at the instance of plaintiff. The instructions given were as follows:

1st. The jury are instructed that the application made by D. W. Russell & Co. for the policy sued on, is a warranty on the part of the assured of the statement therein contained, which if false in any particular will annul the policy, and if the jury find that in said application said D. W. Russell & Co. stated that the stock of goods in the storehouse of said D. W. Russell, was at the time of such application of the value of $10,000, and further find that the value of said goods was only $5,349.43, they will find for defendant.

3rd. The pleadings admit, that it is a condition of the policy sued on, that if the assured shall have, or shall hereafter make any other insurance on the property hereby insured, or any part thereof, without consent of this company, and if the jury find that, after the issuing of this policy, the plaintiffs did make other insurance on the property covered by the policy, in the Home Ins. Co. of New York, without the consent of defendant, indorsed on said policy sued on; and that said Home policy was in force at the time of the fire, they will find for the defendant.

If the jury believe that the plaintiffs attempted to commit a fraud upon defendant by claiming that a bill of goods of $169 had been destroyed by fire, and by that amount increased the amount of goods destroyed, when in truth the goods represented by said bill had not been destroyed or lost, or if the plaintiffs, for the purpose of defrauding defendant, claimed an item of $187, for merchandise bought of More, Rhea & Co. and by that amount sought to increase the amount of goods lost in the said fire, when in truth said merchandise was sold to More, Rhea & Co., and said items

swelled the amount of goods lost by $544, the jury must find for defendant.

6th. If the jury believe that the plaintiffs made and subscribed to the affidavit to proof of loss, dated May 27, 1871, read in evidence, showing the amount of the loss to be $9,773.41, and delivered to the defendant such a statement of their actual loss and damages by the fire in question, and they further believe that the said loss and damages were materially less than would appear from said statement, and that plaintiffs knew the fact when they made and subscribed and were sworn to the same, the plaintiffs cannot recover on the said policy, and the jury will find for defendants.

Under these instructions a verdict was found for plaintiffs.

One of the principal points in this case grows out of the introduction of a letter from J. N. Strong, the defendant's secretary, dated June 12, 1871, which called for a more specific detail of the goods lost by the fire, than had been furnished the company. The fire occurred in April, about two months before the date of this letter. It appears that an agent of the company had been sent to Linneus, the locality of the store insured, immediately after the fire, and in connection with the insured and their clerks, was engaged from time to time at intervals, in seeing that a proper statement of the loss was made. This letter was offered to show that the objections to the plaintiff's particular account of the loss, which had been sent to Hannibal, were not upon the ground that it was not in time, but that it was not sufficiently explicit in details. It appeared very clearly, that this letter was received by the plaintiffs, in answer to one addressed to the company, and although not in the handwriting of Strong, *prima facie* emanated from the office of the company, and no proof being offered to the contrary, must be taken as an authoritative letter. The objection now insisted on, is that no proof of waiver was admissible in the case, as it was not averred in the petition. The averment of the petition is that the plaintiffs delivered at the company's office in Hannibal, a particular account of said loss, as required by the

terms of the policy. There was no demurrer to the petition, nor did the answer set up any defense growing out of the delay to furnish the particular account of loss within the thirty days. It is provided in section 10 of the Practice Act (Wagn. Stat., p. 1015), that "where any of the matters enumerated in section 6, of this chapter do not appear upon the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action." The point of objection made here was raised, first, on the trial, in the introduction of Strong's letter, and again on the motion in arrest. The evidence offered was, that the plaintiffs did furnish a particular account of the loss, and that the particular time when it was furnished was of no importance, since the agent of the company, who was duly apprised of the fire, had been engaged in assisting the plaintiffs to make up such details of information as we may suppose were desired; and if the delay was occasioned by the acts of the defendant, or if the stipulation as to time of furnishing statement was practically rescinded and treated by the defendant as of no importance, such delay beyond the precise time fixed in the policy could surely be explained at the trial, and in reality was proof of the actual performance of the condition precedent, though not exactly within the time fixed by the policy. Time is not usually of the essence of any contract, and if it were, the party performing it may surely show that delays were occasioned by the acts of the party requiring the performance, and no special averment of this is required to let in proof of this character. Such averment was never held necessary either by this court or other courts, and waiver as to time has always been allowed. Nor has the Practice Act changed this as a rule of evidence, and required a special averment of waiver. The Practice Act was designed to promote a more liberal construction of plead-

ings—for in section 42, (Wagn. Stat., p. 1020,) it is declared that "in pleading the performance of a condition precedent in a contract, it shall not be necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part;" and so I presume if he avers the performance of any specified condition, as well as a general allegation of performing all the conditions, he is not bound to state specifically how and in what time he has performed them. The proof of waiver, in this case, is not an excuse for non-performance at all, it is proof of performance, within the meaning of the condition. (St. Louis Ins. Co. vs. Kyle, 11 Mo., 278.)

This was the view taken by this court in the case above cited and it was then observed : "Several defects in the preliminary proof, which may be supplied, if objections are made by the underwriters in time, may well be regarded as waived when the underwriters put their refusal to pay distinctly on some other ground. Nor do I perceive any objection to such evidence on the ground that the pleadings involve a different issue. It is merely evidence of performance. It is not a case of a substitution of a new contract for an old one; it is not an excuse nor non-performance, by the prevention or discharge of the defendants ; but it is evidence of performance. The party for whose benefit the condition is inserted, is presumed to understand its import, and his acceptance is the strongest evidence that the act agreed to be done has been done according to contract." If this reasoning be correct, it certainly applies *a fortiori* to a mere delay in the time of performance, brought about by the act of the company's agent, and acquiesced in by the company,who point out other objections to the statement of loss, and request that the one sent be made more full and exact. To allow the defendant to come in at the trial and for the first time object to all this statement, because it was not made in time, notwithstanding the fact that the delay was occasioned by the acts of its own agent, and notwithstanding the company subsequently assented to further proofs and waived all objections on account of time, would certainly be promotive

of anything else than justice, and we do not understand our Practice Act as requiring any such nicety in pleading. The case of Elfranks vs. Seiler, (54 Mo., 134,) is in conformity to this view, and the case of Scharringhausen vs. Luebsen, 52 Mo., 339, seems rather to conflict with it, and as it is a mere question of practice, we have concluded to adhere to the view expressed in the first named case.

A great variety of objections are made to the instructions in this case. We have copied them at large, not for the purpose of discussing or deciding upon each point of objection, but that it may be seen, that taken together they constituted a correct exposition of the law applicable to the disputed facts and sufficiently exact to avoid any misconception of their meaning by the jury of ordinary intelligence. It is only necessary for a court to instruct the jury upon disputed facts. It is not necessary to frame an instruction in such a way as to exclude all contingencies or exceptions about which there is no evidence—nor is it necessary in one instruction, to combine all the facts and circumstances proper to be considered by the jury, in order to justify a recovery. The objection to the first instruction, that a question of law was submitted to the jury by qualifying the right to recover, on the finding that the plaintiffs had not forfeited the policy by any act on their part, is unfounded. The subsequent instructions explain the acts which would forfeit the policy, at least all about which there was any controversy.

We see no objections to the 3rd and 4th instructions. The policy in the Home Ins. Co. was a substitute for one in the Phœnix, which had expired, and as leave was given in the policy sued on to insure in the Phœnix to that amount, it is not clear, that any notice whatever was necessary of this substituted policy within the meaning of the policy sued on. But if there were doubt upon this point, it is clear that Strong was the agent of the Aurora Co., as well as of defendant; that he recommended and issued the Aurora policy, in which $5,000 of other insurance was expressly recognized. The object of requiring leave to be indorsed on the policy is to give notice of

the additional policy. Strong, the agent of defendant, knew of the policy in the Phœnix and assented to it in this policy, and the policy on the Botsville goods; and when he issued the Aurora policy on the Botsville goods, subsequently transferred to Linneus, the Aurora policy expressly allowed the plaintiff to take other insurance to the amount of $5,000. The whole transaction was well known to defendant's agent. The increase upon the amount of insurance was in fact the Aurora policy, which was issued on the suggestion of defendant's agent.

It could not be of any importance to the defendant, that on the expiration or cancellation of the Phœnix policy, the same amount insured by it was insured in the Home Policy of New York. ·

The court correctly stated the rule of damages, and the instruction asked by defendants on this point was not the law. That instruction maintained, that the plaintiffs were only entitled to recover two-thirds of one-third of the entire loss, whereas, they were entitled to recover one-third of the entire value of the stock insured and lost, provided it did not exceed $2,500. The policies are distinct and independent, so far as the two-thirds rule in regard to the total value of the property is concerned.

All the defendant's instructions were given in this case, except one in relation to the measure of damages, and another in regard to the forfeiture of the policy sued on, by taking out a policy in the Home Ins. Co., and the substantial defenses asserted and relied on were submitted to the jury under instructions drawn up by the defendant. These defenses asserted fraud and falsehood and the jury passed upon the questions, and their verdict, so far as we can see from the evidence, was clearly right. The other defenses now insisted on are at best purely technical and have no merit in them.

Judgment affirmed. The other judges concur.