| 26 | 511 |
| 53 | 102 |

| 26 | 511 |
| 101 | ²352 |

R. M. PARKS ET AL., TRUSTEES, Respondents, v. CONNECTICUT FIRE INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, May 31, 1887.

1. INSURANCE, FIRE—INSURABLE INTEREST—INTEREST OF THIRD PERSON IN CONTRACT.—The mere fact that, under the terms of a fire insurance policy, the loss is made payable to a third person, gives such person a *prima facie* interest in the insurance contract, although he may have no insurable interest in the property insured.

2. ——— DEBTOR AND CREDITOR.—Where a debtor's interest in property is insured, the loss being made payable to the creditor, the latter has a valid interest in the insurance contract, the debtor being a mere trustee for him.

3. ——— AGENCY—WAIVER OF CONDITION.—Conditions in the policy, defining by whom and in what manner proofs of loss shall be made, may be waived by an agent of the insured.

4. ——— CASE ADJUDGED.—Held, that, under the peculiar circumstances of this case, the court's instructions on the question of waiver were correct.

5. HOMESTEAD—VENDOR'S LIEN—FOREIGN LAWS.—Under the laws of another state, which exempt the homestead from the claims of creditors, and which render void an alienation thereof by the husband, without the wife's consent, a conveyance by the husband, without the wife's consent, in payment of a pre-existing debt, and.

a re-conveyance to him, with the reservation of a vendor's lien, are void, and neither extinguish the debt nor give the creditor a valid vendor's lien.

6. CONTRACTS—LEX LOCI.—The local laws of a state form a part of contracts entered into in such state, which contracts are subject to provisions of such laws rendering void certain clauses, if contained in such contracts.

APPEAL from the St. Louis Circuit Court, AMOS M. THAYER, Judge.

*Affirmed.*

NOBLE & ORRICK and PHILLIPS & STEWART, for the appellant: The exchange of deeds between Flippin and Meyer & Aronson was a fraud on the homestead laws of the state of Texas, and, of course, Meyer & Aronson, or their assigns, the plaintiffs, can not enforce any contract based upon such fraud, or obtain any interest in the property covered by the policy, by virtue either of the deeds or the policy    Sects. 50, 51, art. 16, Const. State of Texas, art. 2336, chap. 1, Gen. Stat. Tex. p. 341; Gen. Stat. Tex. 94; *Cameron v. Fay*, 55 Tex. 59, 63; *Mills v. Menke*, 56 Tex. 539; *Porter v. Porter*, 2 Tex. App. 433; *Bank v. Insurance Co.*, 62 Tex. 466. The plaintiffs can recover an amount in excess of that claimed by the assured in his proof of loss.   61 N. Y. 594; *Campbell v. Insurance Co.*, 10 Allen, 213.

EDWARD CUNNINGHAM, JR., with E. B. ADAMS, for the respondents: Meyer & Aronson were, by the terms of the policy, appointed to receive the proceeds, and were immediately entitled to the possession of the policy.   That possession was rightful *prima facie*, and without proof.   *Franklin v. Insurance Co.*, 43 Mo. 495. The interest referred to in the words, "as their interest may appear," is an interest in the contract of insurance, and not an interest in the property insured.   *Bidwell v. Insurance Co.*, 40 Mo. 46; Wood on Fire Insurance, sect. 285.   Otherwise it would be made to appear that

the policy insured the interest of the appointee in the property, and not the interest of the assured therein. That the policy covers the interest of the assured only, is settled beyond question. *Frink v. Insurance Co.*, 45 Barb. 384; *Birdseye v. Insurance Co.*, 26 Conn. 165; *Hale v. Insurance Co.*, 6 Gray, 172. If the defendant, after the fire, denied all liability under the policy, by claiming that the policy had been cancelled before the fire, that was a waiver of proofs of loss, and such waiver was provable under the plaintiff's averment that proofs were given; or, if proofs were submitted by the assured, and were not objected to by the defendant, that was a waiver of all formal defects in the proofs, because the defects might have been corrected, had objections been made. *St. Louis Insurance Co. v. Kyle*, 11 Mo. 278; *Sims v. Insurance Co.*, 47 Mo. 61; *Russell v. Insurance Co.*, 55 Mo. 593; 9 Mich. 289; 71 N. Y. 396; 33 Ala. 9; 26 Ill. 360; 46 Me. 500; 43 Pa. St. 350. Where a fact is known to an insurance agent, it is known to his principal; and such knowledge, even though the fact is required, by the terms of the policy, to be noted on its face, is a waiver of such requirement. *Russell v. Insurance Co.*, 55 Mo. 594; *Franklin v. Insurance Co.*, 42 Mo. 459, et seq.; *Combs v. Insurance Co.*, 43 Mo. 151; *Paul v. Insurance Co.*, 10 Brad. 431; *Putnam v. Insurance Co.*, and cases cited in opinion, 18 Blatchf. C. C. 368; *Whited v. Insurance Co.*, 76 N. Y. 415; *Landers v. Insurance Co.*, 19 Hun [N. Y.] 174; *Richmond v. Insurance Co.*, 79 N. Y. 230, reversing s. c., in 15 Hun, 248; *Broadhead v. Insurance Co.*, 23 Hun, 367.

LEWIS, P. J., delivered the opinion of the court.

This is one of five cases argued and submitted together by the parties, and depending for their determination on substantially the same record. The suit is on a policy of fire insurance, issued in the spring of 1884, by the defendant, to one Martin V. Flippin, a

citizen of the state of Texas, insuring him to the extent of one thousand dollars against loss or damage by fire on his certain building in the town of Texarkana, Texas, and providing that the loss, if any, should be paid to Meyer & Aronson, or order, as their interest might appear.

The building was totally destroyed by fire during the term specified in the policy.

The petition of the plaintiffs was in the usual form, alleging the assignment of the policy to the Mechanics' Bank, of which the plaintiffs are the trustees and successors. The answer admitted the execution of the policy and the total destruction of the premises by fire, but substantially denied all other averments of the petition, and particularly the furnishing of proofs of loss, and by way of special defence pleaded : (1) That only three-fourths of the actual loss could be recovered by reason of a provision, in the policy referred to as the three-fourths value clause ; and, further, that there was over-insurance of the property in violation of the provisions of the policy. (2) That before the fire the assured had sold and changed the title of part of the property. (3) False representations by the assured of the title to the property, and his interest therein. (4) The existence of an undisclosed mortgage upon the property at the time the policy was issued. (5) That, prior to this suit, the plaintiffs had sued Flippin by attachment, and had garnished this defendant as his debtor under this policy. (6) That the proceeds of this insurance were, by the laws of Texas, exempt from the claims of creditors. (7) That, prior to the institution of this suit, Flippin had brought suit in Texas against the defendant on this same policy, and that the plaintiffs had been cited to appear as co-defendants in said suit, and that said suit is still pending.

The policy here sued on permitted the defendant to cancel the policy at any time upon payment to the holder of the policy of the premium then unearned. It

permitted eighteen thousand dollars " total concurrent insurance, subject to three-fourths value clause." The printed portion of the policy provided that if the assured should make other insurance on the property, without the consent of the defendant written on the policy, or if the property should be sold or transferred, or if any change should take place in the title or possession of the property, or if the interest of the assured in the property were not truly stated in the policy, then the policy should be void.

The affirmative defences set up in the answer were traversed by reply    Such portions of the reply as are material in passing upon the points made on this appeal are as follows :

I.  As to the first affirmative defence, the reply states that there was no over-insurance, and, further, " the said plaintiffs deny that said total insurance permitted, and especially that the insurance represented by the policy herein sued on was or is subject to any three-fourths value clause, as alleged, and deny that in case of the total destruction of the property insured the same should not be valued, for the purpose of ascertaining the amount to be paid for total insurance, in a sum greater than three-fourths of the actual value of the building insured, but, on the contrary, aver that said policy was executed and delivered in the state of Texas, and was so executed and delivered for the purpose of insuring a citizen of the state of Texas against loss or damage by fire of real property situate in the state of Texas ; that, at the time said policy was so executed and delivered, and during all the time of the running of the insurance under said policy, and at the time of the destruction of the building and real property so insured by said policy, there was in force in said state of Texas a statutory enactment, the same being article 2971, of the Revised Statutes of Texas, adopted by its legislature in the year 1879, in words and figures as follows :  ' A fire insurance policy, in case of a total loss by fire of property insured,

shall be held and considered to be a liquidated demand against the company for the full amount of such policy; provided that the provisions of this article shall not apply to personal property.' "

II. As to the second affirmative defence the reply admits that the policy contains a clause avoiding it in case the building be sold or transferred, or if any change takes place in the title or possession of the building, without the consent of the defendant endorsed on the policy. It also admits that Martin Flippin, during the life of the policy, executed a conveyance of the north half of the building to the Citizens' Bank of Texarkana, but the plaintiffs aver that, being the holders of the several notes executed by Flippin, which were a prior vendor's lien, they were, under the laws of Texas, the legal owners of the property, and so remained, notwithstanding the deed of Flippin to the bank; so that said deed did not operate to make any change in the legal title or possession.

The plaintiffs further say, that the defendant had full knowledge of the conveyance to the bank, and waived the indorsement of any consent upon the policy, and waived any supposed violation of its terms occasioned thereby, and, with full knowledge of the facts, treated the policy as valid and subsisting, and that the plaintiffs and Flippin, relying thereon, took out no other insurance; by all which facts the plaintiffs claim the defendant is estopped from relying on such conveyance as a forfeiture of the policy.

III. As to the third affirmative defence, the reply states that Flippin truly stated his interest in the property to the defendant; that the defendant was all the time informed as to the true condition of the title; that it inserted as much thereof in the policy as it saw fit to insert; that the defendant, notwithstanding its full knowledge of the condition of the title, treated the policy as valid and subsisting up to the date of the fire,

and is, therefore, estopped from relying on the facts set up in said defence, in avoidance of the policy.

IV. The same facts as to the third are also stated in reply to the fourth affirmative defence.

V. The institution of the attachment suit, mentioned in the fifth affirmative defence, the reply admits, but denies that the plaintiffs claim, by their interrogatories, or otherwise, in said suit, that the defendant is indebted to Flippin on account of said policy.

VI. As to the sixth affirmative defence pleaded by the said defendant, the said plaintiffs say that they admit that the building insured by said policy was situate in the state of Texas, and that said policy was issued in said state, and is subject to the laws of said state; that the said Flippin was a citizen of the state of Texas. Whether said Flippin was, at the date of said policy, and at the time of the destruction of said building, by fire, as aforesaid, occupying or using a part of said building, as a homestead, or whether he was the head of a family, or was entitled to homestead protection in said state, these plaintiffs have not knowledge or information sufficient to form a belief, and, hence, require proof. Whether, under the laws of the state of Texas, said Flippin had the right to claim and hold all the interest he had in said property as a homestead, and whether he had a right to enjoy the benefit thereof, these plaintiffs have not knowledge or information sufficient to form a belief, and, hence, require proof. But these plaintiffs deny that said Flippin had, under the laws of Texas, or any other laws, the right to have and enjoy the money derived from the insurance of his homestead, in case the same should be destroyed while insured as alleged, and deny that, under the laws of Texas, or any other laws, said Flippin had the right to have and enjoy such money derived from such insurance, free from the claims of his creditors, or free from the obligations in the agreement contained in said policy, whereby the loss was payable to Meyer & Aron-

son, or order, as their interest might appear.  And the said plaintiffs deny that said agreement contained in said policy, whereby the loss, if any, was payable to Meyer & Aronson, or order, as their interest might appear, is, by reason of said homestead exemption, or for any other reason, in violation of the laws of Texas or void.  And they deny that, by said assignment by Meyer & Aronson, no title to said policy, or right to claim for any loss thereunder, was obtained by the plaintiffs.

VII.    As to the seventh affirmative defence pleaded by the said defendant, the said plaintiffs say, whether on the —— day of ————, 1885, or before the beginning of this action, Martin V. Flippin filed his suit against this defendant, or whether he so filed it on the same policy of insurance now sued on, or whether he so filed it in the district court of Bowie county, Texas, or whether he thereby claimed to recover of this defendant the identical sum of money now claimed by the plaintiffs herein, or whether said action is still pending and undetermined in said district court of Bowie county, Texas, these plaintiffs have not knowledge or information sufficient to form a belief, and, hence, require proof.    But these plaintiffs deny that they, or either of them, had notice or citation in said cause requiring them to appear and defend therein.

There was evidence at the trial below tending to show the following facts :

That, prior to the year 1884, and up to the time the policy was issued, there was a mortgage on the property in favor of Lehman, Abraham & Company, a firm of New Orleans merchants, and this mortgage remained unsatisfied at the time of the fire.  This mortgage was not mentioned in this policy, but Charles E. Beard, the agent of the defendant, at Texarkana, who issued the policy, was then, and at all times, well aware of its existence ; that Martin V. Flippin was the head of a family, resident in Texarkana.  At the time this policy was issued he occupied a separate residence, but he occu-

pied a part of this building as his place of business. Prior to the issuing of the policy, Flippin, with the full knowledge of the defendant's agent, Beard, had conveyed the building, and the land on which it stood, to Meyer & Aronson, merchants of St. Louis, in consideration of twenty-five thousand dollars, due them from him, and, on the same day, Meyer & Aronson, by general warranty deed, re-conveyed the property to Flippin, for the same sum of money, represented by promissory notes of Flippin, which notes, both upon their face and by the terms of Flippin's deed, were made a vendor's lien upon the property. When the policy was delivered to Meyer & Aronson they indorsed and delivered it, together with Flippin's notes, for value received, to the Mechanics' Bank, of which the plaintiffs are successors. About three months before the fire, Flippin and his wife executed and delivered to the Citizens' Bank of Texarkana, of which the defendant's agent, Beard, was cashier, and with the full knowledge of the defendant's said agent, a deed to the north half of the property insured. At the same time the said Flippin and wife quitted their former place of residence, and took up their abode in the third story of the south half of the premises insured ; here they remained till the fire occurred. The homestead law of Texas provides that the lot of ground used as a place of exercising the calling or business of the head of the family, as well as the place of residence of the family, shall be exempt from the claims of creditors. Within a week before the fire, the defendant's agent, Beard, wrote to the plaintiffs, enclosing a check for the unearned premium on this policy, and requested that the policy be surrendered for cancellation. This letter did not reach the plaintiffs till after the fire. Beard, at the same time, informed Flippin that all the insurance on this building had been cancelled, and advised Flippin to procure insurance elsewhere. Thereupon, Flippin applied to the East Texas Fire Insurance Company for five thousand dollars of

insurance on his building, representing it as uninsured, and obtained twenty-five hundred dollars insurance.

At the date of the fire there was the following insurance on the building, inclusive of the policy in the East Texas Fire Insurance Company :

| | | |
|---|---|---|
| Home Insurance Company | $2,000 | 00 |
| Connecticut Insurance Company | 1,000 | 00 |
| Hanover Insurance Company | 1,333 | 33 |
| Citizens' Insurance Company | 666 | 67 |
| Hartford Insurance Company | 3,000 | 00 |
| Phœnix Insurance Company | 2,000 | 00 |
| East Texas Fire Insurance Company | 2,500 | 00 |

Making a total insurance of twelve thousand five hundred dollars upon the property above described, issued to Martin V. Flippin, all being concurrent with the policy herein sued upon.

No indorsement, in writing, was made by the Connecticut Insurance Company, or its agents, as required by the policy, consenting to the transfer of the property.

By the constitution and laws of Texas, existing at the date of the said mortgage conveyances and the policy sued on, and at the date of the loss, Flippin, being the head of a family, had no power to mortgage the property insured, although his wife should join in the mortgage, if it was his homestead ; and, furthermore, could not sell this property, if it was his homestead, without joinder of his wife in the deed, all such mortgages and conveyances being, under the constitution and laws of Texas, absolutely void. These facts appeared from the evidence. The evidence tended to show that the south half of the property insured, and which had not been conveyed by Flippin and wife prior to the fire, and which was occupied by him as a homestead at the date of the fire, was worth about eight thousand dollars. The case was tried before the court sitting as a jury, and the trial resulted in a judgment for the plaintiffs, in the sum of $840.80.

The foregoing statement of the issues, and of the evidence, is sufficient to pass intelligently upon the appellants' complaints, which are, substantially, that the court erred in its declarations of law ; that the finding is against the evidence, and that the damages are excessive.

The defendant, in its answer, denied that Meyer & Aronson, at any time, had any insurable interest in the property ; and denied that the plaintiffs had any title to sue upon the policy.    Upon the issue thus framed, the court, at the plaintiffs' instance, declared the law to be as follows :

"1.    The court declares the law to be, that the clause contained in the written portion of the policy, making the loss, if any, payable to Meyer & Aronson, or order, as their interest may appear, dispenses with any proof on the part of the plaintiffs, further than the presumption arising from the possession of the policy by Meyer & Aronson, of other or further transfer of the policy to Meyer & Aronson."

And the court refused the following declarations of law, asked for by the defendant :

"2.    Before the plaintiffs can recover in this case, under the issue joined, it must appear that they had an interest in the property covered by the insurance policies sued on, at the date of the fire; and under the evidence adduced.    The possession of the notes, by the plaintiffs, in the petition mentioned, is not sufficient to establish such interest."

"3.    The court declares the law to be, that if the property covered by the policies and destroyed by fire February 21, 1885, was, on the fourth day of March, 1884, used by Flippin as his place of business ; that he then had a wife, and was the head of a family ; that such place of business, exclusive of the improvements, did not exceed in value the sum of five thousand dollars, then said property was homestead property, as defined by the laws of Texas ; and that Flippin, on said fourth

day of March, executed and delivered to Meyer & Aron-son his deed for said property, and that his wife did not join in the same, then such deed was void, and conveyed no title or interest therein to Meyer & Aronson ; and if, after the making of said deed, by Flippin, to Meyer & Aronson, they executed a deed to Flippin for the same property, having no other title than that acquired by Flippin's deed, and that the notes mentioned in the petition were given for the purchase money for said property thus sold, then the said notes are without consideration, and the agreement in the notes giving Meyer & Aronson a lien for such purchase money created no lien, and did not give to Meyer & Aronson, or their assigns, any interest in said property.''

The defendant also stated, in its sixth affirmative defence, that the proceeds of this insurance were, by the laws of Texas, exempt from the claims of creditors, as the insurance was upon Flippin's homestead, and that, therefore, the alleged agreement under the said policy, whereby the loss under the same, if any, was payable to Meyer & Aronson, or order, as their interest might appear, was in violation of said laws of Texas, and void, and that, by said alleged transfer, or assignment, made by said Meyer & Aronson, no title to said policy, or right to claim any loss thereunder, was obtained ; to which affirmative defence the plaintiffs replied as above stated.

On this branch of the case the defendant asked the following instruction, which the court refused :

"1.   The court declares the law to be, that if it appear, from the evidence, that Flippin was indebted to Meyer & Aronson before the making of the deed by Flippin to them, and that, for the purpose of securing the payment of said indebtedness upon his homestead property, Flippin made the deed to Meyer & Aronson, without his wife joining therein, and thereupon Meyer & Aronson conveyed said property to Flippin, and that the notes mentioned in the petition were intended by

him to stand for, and represent solely, said original indebtedness, and no other consideration was received, or to be received, by Flippin, for said notes, and that, in order to procure the payment of the same, the lien, reserved and mentioned in the notes, was reserved upon said property, as though it were purchase money, then said transaction was a fraud upon the homestead laws of Texas, and the said lien, sought to be created as above, was ineffectual, and gave to Meyer & Aronson, or their assigns, no interest in said property, and that the notes given, growing out, or as a part of, said transaction, gave Meyer & Aronson, or their assigns, no insurable interest, and no right to recover, under the issues in this case.''

"8. The court declares the law to be, that if it finds, from the evidence, that the property destroyed by fire was homestead property at the time the insurance was effected, that Flippin's wife did not join in any conveyance of such homestead, and that the policies on the same were issued to Flippin as the assured, then Flippin had no power, without joinder of his wife, in writing, to cause the loss under such policies to be paid to Meyer & Aronson, or order, as their interest may appear; but that, under the laws of Texas, the proceeds of such insurance stand for the homestead itself, and is also free from attachment or garnishment.''

And upon its own motion, the court declared the law, as follows:

"If the court finds, from the evidence, that the policy in suit was taken out by Flippin, to secure the payment of the notes offered in evidence, drawn by Flippin in favor of Meyer & Aronson; and if it appears that said notes are still unpaid, and are now owned by the plaintiffs; and if it appears that the indorsement of said policy, 'loss, if any, payable to Meyer & Aronson, or order, as their interest may appear,' was made on said policy by the defendant's agent, who issued the same to effectuate the purpose for which said policy was taken out; and if, under the evidence and other in-

structions, the court finds that the policy is not avoided for breach of any of the conditions of the policy pleaded, by way of defence, in the answer, then the court declares, as matter of law, that the indorsement on said policy, aforesaid, makes Meyer & Aronson, or their transferees of the notes and policy for value, parties in interest to the contract of insurance, within the meaning of said contract, and entitles them to recover on the same, even though the insured property may have been the homestead property of said Flippin, under the laws of Texas, when said policy was executed, and when the alleged loss occurred."

The two propositions hereinabove stated, namely, the one having reference only to the plaintiffs' title to sue, and the other bearing upon their right of recovery, as depending on the nature of the liability sought to be enforced, are so closely allied that they will be considered together.

While it is conceded that a contract of insurance is a contract of indemnity, the mere fact that the loss was payable, by the terms of the policy, to Meyer & Aronson, or their order, as their interest might appear, gave them, or their assigns, *prima facie*, an interest in the contract of insurance. *Franklin v. Insurance Co.*, 43 Mo. 494, 495. "Every fact and declaration," says Wagner, J., "must be considered as the result of design or agreement, and the intent of the parties should have effect, if it can be done consistently with established rules." The statement in the policy is an admission by the company, that Meyer & Aronson had an interest in the contract, and were to receive the benefit of it. An interest in the property itself was not essential to enable Meyer & Aronson, or their assigns, to maintain this action. *Ellis v. Kreutzinger*, 27 Mo. 314.

It stands admitted that Meyer & Aronson were, and through them, the plaintiffs are, creditors of Flippin, to an amount largely in excess of the entire loss suffered. The mere fact, if it be a fact, that Flippin conveyed his

homestead property to Meyer & Aronson, his wife not joining in the deed, and that Meyer & Aronson re-conveyed to Flippin, securing a vendor's lien on the property for the alleged purchase money, and that the entire transaction was in fraud of the homestead laws of Texas, only goes to show that Meyer & Aronson had no insurable interest in the property itself, and not that it was legally impossible for them to have an interest in the contract of insurance, as pledgees or assignees of the policy.

It is true that a general creditor has no insurable interest in his debtor's property. Wood on Insurance, sect. 300. But the policy here in question does not purport to insure the interest of Meyer & Aronson. It purports to insure the interest of Flippin, and the fact that he had an insurable interest is conceded. The assignment does not change the contract. It simply converts one of the parties into a trustee for the other, and every condition, upon which depends the liability to pay, remains as before. Were this not so, there would be no assignment, but only a new contract. The defendant insists, however, that the plaintiffs can claim nothing by virtue of an interest in the contract, because the petition places their right of recovery exclusively on an insurable interest in the property, as growing out of the alleged vendor's lien. It is generally understood that a person can not sue on one right of action, and recover on a different right not declared upon. But, by right of action, must here be understood, not the conclusions of law derived by the plaintiff from the facts stated, but the facts which make out his case and entitle him to redress. He must give the opposing party notice of the facts which he expects to prove and recover upon. But he is not required to classify them and declare upon what particular facts, or groups of facts, his recovery should follow, as a matter of law. If he does so, however, this can not preclude any legal right that should follow from other facts properly pleaded, but unaccom-

panied by legal conclusions. It has long been settled that, if a plaintiff shows, by his petition, that he is entitled to a certain remedy, the courts will not deny that remedy, because he has only asked for one to which he is not entitled. This illustrates the judicial duty of applying the true law to the facts, in all cases, whatever may be the views or demands of parties concerning the state of the law. If, therefore, it appears in this case that the plaintiffs, in view of the facts, are not entitled, as a matter of law, to recover on account of the alleged vendor's lien, they may, nevertheless, by reason of other facts set forth in their petition, have a perfect right of recovery. Our practice does not, in any case, require a party to state his conclusions of law in a pleading, or the processes whereby the law will discover his title to relief. He has only to plead the facts in proper form, with an appropriate demand for the law's interposition, and the courts will determine, as well the kind and measure of such interposition, as the grounds on which it will be granted or withheld. The petition, in this case, states the fact of a vendor's lien, together with the conclusion of law that this created an insurable interest in the holder, entitling him to indemnity. But it also states other facts which show that, as assignees of the policy, the plaintiffs are entitled to the same indemnity. Unless, therefore, it can be shown that the assignment, as stated, was invalid, the plaintiffs have pleaded a sufficient right of recovery, without regard to the vendor's lien.

The chief objection against the validity of the assignment is founded on the provisions concerning homesteads, in the constitution of the state of Texas. Sections 50 and 51, of article 16, are as follows :

"Sect. 50. The homestead of a family shall be, and is, hereby protected from forced sale for the payment of all debts, except the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon,

and in this last case only when the work and materials are contracted for in writing, with the consent of the wife, given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money thereof, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead, involving any condition of defeasance, shall be void.

"Sect. 51. The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town, or village, shall consist of lot or lots, not to exceed in value, five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; *provided*, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; *provided*, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

The defendant holds that the effect of these provisions is no less restrictive, as to the alienation of a policy of insurance, or its proceeds, on homestead property, than as to an alienation of the property itself. It is difficult to understand the ground on which this position may be reasonably supported. It certainly does not appear in the language of the constitutional provision. That deals only with the real property and the improvements thereon. Homestead laws are construed liberally with a view to effectuating their humane purpose of preventing forced transfers of the debtor's property. But

when, in derogation of common law principles, they lay restraints on voluntary alienation, it would seem more consistent with our system of jurisprudence to construe them with greater strictness. A policy of insurance is no part of the realty. It is not even appurtenant or incidental to it. It is a mere contingent *chose* in action, which the holder buys for a price wholly disconnected from the property, and which he may transfer or surrender, without affecting any title or tenure pertaining thereto. If no policy exists, the objects of the homestead law's protecting care are, nevertheless, as complete in all entirety, as if they were written in any number of insurance policies. Homestead laws do not pretend to guard against the calamity of fire. That calamity may, so far as the law is concerned, work a practical defeat of the beneficial objects which it intends. If such a defeat be forefended by the owner in a policy of insurance, his act, with all its bearings and results, is wholly independent of anything that the homestead law secures or contemplates. There is certainly no such connection between the benefits so secured, and the protection afforded by the homestead law, as to make it necessary that the one shall follow the other in its peculiar limitations and restrictions. Some Texas decisions are cited in argument, but we do not see that, on this point, they have any bearing in the defendant's favor. In *Cameron v. Fay* (55 Texas, 58), it is held that "money due from an insurance company to the owners of a homestead, for loss sustained by fire in the destruction of the home building, is not subject to garnishment by one who held an unsatisfied mechanic's lien on the building before its destruction." When we consider that, under the constitutional provision, a mechanic's lien was good against the homestead property itself, this exemption of the insurance money from the same liability seems to separate the latter very decidedly from incidents attaching to the property by reason of the homestead law. Said the court : "T. A. Fay and her husband, however, there being no

agreement to that effect, were not under any legal obligations to insure, and, hence, the policy taken out by her, and for which she paid the premium, was but a personal contract upon a new and independent consideration, and did not enure to the benefit of" the holders of the mechanic's lien. *Porter v. Porter* (2 Tex. App. [Civ. Cas.] 381), is to the same effect, with the difference that, in that case, the garnishing creditors held a vendor's lien on the homestead property. This vendor's lien was enforceable against the homestead. The court declared that the insurance money was protected by the homestead law in like manner as the proceeds of a sale of the property. At the same time, full effect was given to a sale and transfer of the policy by the homestead owners, even though made after it had become matured by a loss. "An insurance policy," said the court, "is a strictly personal contract, upon a new and independent consideration from that of the homestead purchase, and a lien upon the homestead does not attach to, and embrace, such policy or the money due thereon." It was not questioned that such a voluntary transfer might be effectually made, and the right of the transferees to recover the insurance money was sustained against the claim of the garnishing creditors. The other decisions referred to, are quite as remote as these from any conclusion to the effect that, by the constitution and laws of Texas, there exists a prohibitory restriction upon the voluntary transfer by a homestead owner of his policy of insurance on the homestead property. We find ourselves unable to sustain the defendant's position on this point.

Another point made against the plaintiffs' title to the proceeds of the policy is, that the transfer to Meyer & Aronson was without consideration and void, wherefore they and their assigns acquired nothing by the undertaking to pay them the proceeds, as their interest might appear; that the conveyance of the homestead by

Vol. xxvi—34

Flippin was absolutely void, so that his grantees had nothing to convey back to him, and thus there was no consideration for the notes, or for the transfer of the policy to secure them.

The testimony tended to prove, and the court·evidently found, that, at the time of the transactions between Flippin and Meyer & Aronson, Flippin was already indebted to the other parties to the amount of twenty-five thousand dollars, and that the sole object of all their transfers and undertakings was to secure the payment of this debt. If Flippin's conveyance of the homestead was effectual, the original debt was extinguished, and a new one was created in the notes given for the re-conveyance from Meyer & Aronson to Flippin. But, if Flippin's conveyance was void, then the intention of the parties was never consummated. Meyer & Aronson got nothing for their debt, and this remained in full force, to be represented by the notes given, which, to that extent, carried out the original intention of the parties. The notes, therefore, and the transfer of the policy to secure them, were founded upon valuable consideration, and there was something more than a *prima facie* showing of interest in the ·proceeds of the policy, vested in Meyer & Aronson, or their assigns. At the least, their possession of the notes and policy, as the court properly instructed, made out a *prima facie* case, and nothing appearing from the antecedent transactions had any tendency to rebut this showing.

Objection is made that the court, in adjusting the amount of ·the plaintiffs' recovery, ignored the words in the policy which provided that it should be "subject to three-fourths value clause." The answer explains that the meaning of this clause is, "that, in case of the total destruction of the property insured, the same should not be valid for the purpose of ascertaining the amount to be paid for .total insurance, a sum greater than three-fourths of the actual value

of the building." The plaintiffs, neither admitting nor denying, in their reply, the correctness of this explanation, set up, and afterward introduced in evidence, the Texas statute above quoted, which, in effect, declares nugatory every such stipulation in a policy of insurance. But, even if there were no such statute, the defendant could claim nothing on this ground, since the policy itself does not contain any clause fitting either the description or the explanation. The words, "subject to three-fourths value clause," are the only words in this relation to be found in the contract. They do not show the nature of the obligation intended, if any there be, and hence none appears which the court can intelligently enforce. Where is the "clause" to be found? And, when found, what does it contain? The record fails to answer.

Nothing was shown with reference to the suit of Flippin against the insurance company, or the garnishment proceedings instituted by these plaintiffs, which could, in any manner, hinder the plaintiffs in the present proceeding, or upon which the defendant attempts here to base any substantial defence.

As to the other defences set up in the answer, which are not disposed of by what is already said in this opinion, the following declarations of law, given by the court, sufficiently show their bearing and effect on the determination of the cause. The letter of February 21, 1885, informed the defendant of the burning of the insured property. The letters of February 16 and 20, 1885, announced the cancellation of the policy, but did not reach the plaintiffs until after the fire.

"2a. The court declares the law to be, that if the plaintiffs, by their attorney, wrote, and sent to the defendant the letter read in evidence, of date February 21, 1885; and if the defendant received the same; and if, on said twenty-first day of February, 1885, and thereafter, Charles E. Beard was the general agent of the defendant, attending to, and managing, its insurance business,

in Texarkana, Texas ; and if, within two or three days after the fire, on February 21, 1885, the said Beard, then being the agent of the defendant, as aforesaid, notified, and informed Flippin, the insured in the policy in suit that his said policy had been cancelled ; and if, at about that time, the said Flippin suggested to the said Beard that he would write to the defendant concerning his insurance ; and if, thereupon, the said Beard, being the agent of the defendant, as aforesaid, told the said Flippin that his said policy had been cancelled ; and if, afterwards, and on the twenty-ninth day of March, 1885, the said Flippin made out, executed, verified, and delivered to the defendant the proofs of loss read in evidence ; and if, on receipt of the same, the said defendant, or its agents, made no objection to the said Flippin, or to the plaintiffs, as to the sufficiency of such proofs, and made no objection as to the time within which such proofs were so delivered, then, under the pleadings in this cause, the defendant can not now complain of any failure to comply with the provisions of the policy sued on, in relation to furnishing either notice of fire or proofs of loss."

"3. The court declares the law to be, that if the sum of two thousand five hundred dollars, insured by the policy in the East Texas Fire Insurance Company, when added to any and all other insurance in force on the building insured by the policy in suit, did not, at the time of the execution and delivery of said policy in the East Texas Fire Insurance Company, amount to over seventeen thousand five hundred dollars, then the securing of the policy in the said East Texas Fire Insurance Company constitutes no defence to this action."

"4. The court declares the law to be, that if, prior to the securing of the policy of insurance in the East Texas Fire Insurance Company for twenty-five hundred dollars by Flippin, Charles E. Beard, as agent for the defendant, informed said Flippin that the defendant and several other insurance companies, of which said

Beard was also agent, and before that time carrying insurance on the building insured by the said defendant in and by the policy sued on, had cancelled all such insurance, and that there was then no insurance thereon; and if said Beard then and there advised said Flippin to get other insurance, if he wanted any on his said building; and if, thereupon, and acting on such information and advice of said Beard, the said Flippin negotiated · and secured the said policy of insurance in the East Texas Fire Insurance Company, then the securing of such policy under such circumstances constitutes no defence to this action.''

"5. The court declares the law to be, that if, in the matter of the execution and delivery of the policy in suit, Charles E. Beard was the general agent of the defendant company, and was acting as such; and if he continued to be the general agent of the defendant company in the conduct and management of its insurance business at Texarkana, Texas, from the date of said policy to the twenty-first day of February, 1885, the date of the loss thereunder; and if the deed from M. V. Flippin to the Citizens' Bank, dated January 1, 1885, read in evidence, was made and delivered to said bank at said bank's request, in payment of a debt due it from Flippin; and if said Beard was, at the time of the making and delivery of said deed, aware of its delivery and of its purposes, terms, and provisions; and if, as agent of the Merchants' and Pennsylvania Fire Insurance Companies, the said Beard, contemporaneously with the delivery of said deed, at the request of said Flippin, and without objection on Beard's part, made an indorsement on two policies theretofore issued by said two last named corporations on the building covered by the policy here in suit, and then held by said Flippin; and if the said indorsement, so made by Beard at the request of Flippin, made the loss, if any, under said two policies, payable to the Citizens' Bank, and was understood and intended by said Beard to cover such interest as said bank had

acquired in said building by said deed; and if, notwith-
standing the execution and delivery of said deed, and
notwithstanding the knowledge of said Beard thereof,
as aforesaid, and his indorsement of said two policies at
the request of Flippin, as aforesaid, he, the said Beard,
acting as the agent of the defendant as aforesaid, con-
tinued without objection to carry the policy of insurance
here sued on, as a valid and existing contract of insur-
ance, up to the sixteenth day of February, 1885; and if,
on that day, the said agent of the defendant wrote the
letter, read in evidence, of that date, to Meyer & Aronson;
and if such letter came to the knowledge and possession
of the plaintiffs or their attorney; and if, thereupon,
the said plaintiffs' attorney wrote and sent the letter, of
date February 18, 1885, read in evidence, to said Beard;
and if, afterwards, and on the twentieth day of Febru-
ary, 1885, the said Beard wrote the letter of that date,
read in evidence, to R. R. Hutchinson, for the plaintiffs,
undertaking in this and in said letter to Meyer & Aron-
son to cancel the policy in suit and return the unearned
premium thereon, in accordance with the right in that
regard reserved to the defendant in the policy sued on,
for other reasons than because of the existence of such
deed or conveyance to the Citizens' Bank, and not
claiming any forfeiture of said policy, or violation of its
provisions, then the conveyance of said north half to
said Citizens' Bank, even if consent thereto was not
indorsed on said policy, constitutes, under the plead-
ings in the case, no defence to this action."

"6.   The court declares, as a matter of law, that if
the deed from Flippin to Meyer & Aronson, and the
deed from Meyer & Aronson to Flippin, read in evi-
dence, were known to the defendant's agent, Charles E.
Beard, at the time he issued the policy; and if the defend-
ant, notwithstanding such knowledge of its said agent,
made no objection to the state of Flippin's title, but
received the premium and delivered the policy to Flippin,
or to Meyer & Aronson; and if thereafter, up to the

sixteenth and twentieth days of February, 1885, the defendant treated the policy as in force ; and if, on said sixteenth and twentieth days of February, 1885, the said Beard was still the agent of the defendant, and on said days wrote and sent the two letters of these two dates, put in evidence, to Meyer & Aronson and to R. R. Hutchinson, cashier of the Mechanics' Bank ; and if the policy in suit makes the loss, if any, payable to Meyer & Aronson, or order, as their interest may appear, then the fact, even if it be a fact, that, by operation of said deeds, or of either of them, said Flippin was not, at the date of the issuing of said policy, the owner in fee-simple of the property described in the policy, constitutes no defence to this action."

"7.   The court declares the law to be, that if, in the matter of the execution and delivery of the policy in suit, Beard was acting as the agent of the defendant company ; and if, at the time of such execution and delivery, the said Beard had knowledge of the existence of the mortgage, of date March 6, 1882, upon the property insured, to secure Lehman, Abraham & Company, as creditors of Flippin ; and if, notwithstanding such knowledge, the said Beard, as such agent for the defendant, received the premium, and delivered the policy to said Flippin, or said Meyer & Aronson ; and if, with such knowledge of its said agent, the said defendant carried the risk, without objection, until the sixteenth day of February, 1886 ; and if, on that day, the said agent of the defendant wrote the letter, read in evidence, of that date, to Meyer & Aronson ; and if such letter came to the knowledge of the plaintiffs, or their attorney ; and if, thereupon, the plaintiffs' attorney wrote and sent the letter, of date February 18, 1885 ; and if, afterwards, on the twentieth day of February, 1885, said Beard wrote the letter read in evidence, of that date, to R. R. Hutchinson, for the plaintiffs, undertaking, in both his said letters, to cancel the policy in suit, and to return the unearned premium thereon, in accord-

ance with the right, in that regard reserved to the defendant in said policy, for other reasons than because of the existence of such mortgage, and making no claim that said policy had been forfeited, or its provisions violated, then the existence of said mortgage, even though not noted in the written part of the policy, constitutes no defence to this action."

There was substantial testimony tending to establish all the facts hypothetically stated in these instructions, and the result shows that the court, sitting as a jury, found them satisfactorily proved. We find no fault in the conclusions of law deduced from them. All of these conclusions, to which serious objection is made, turn, virtually, on the extent of the agent Beard's capacity to stand in the place of the company, so that his acts, knowledge, admissions, or waivers, in and about the transactions referred to, were binding on the defendant, as touching the matters in controversy. It is not disputed that Beard was authorized to issue policies, and to do for the company, at Texarkana, all acts, and to assume all responsibilities, that are usually entrusted to a general agent of such a corporation. The law that applies to such a representative position is well settled. Notice given to the agent, referring to business matters within the scope of his agency, is notice to his principal. Conditions and causes of forfeiture lying within the same scope, may be effectually waived by him. *Hayward v. Insurance Co.*, 52 Mo. 181. The application of the rule is not to be balked by a stipulation that the notice, or waiver, must be written in or upon the policy, together with the fact that there is no such writing. *Russell v. Insurance Co.*, 55 Mo. 594; *Franklin v. Insurance Co.*, 42 Mo. 459; *Combs v. Insurance Co.*, 43 Mo. 151; *Putnam v. Insurance Co.*, 18 Blatchf. C. C. 368; *Whited v. Insurance Co.*, 76 N. Y. 415; *Landers v. Insurance Co.*, 19 Hun, 174; *Richmond v. Insurance Co.*, 79 N. Y. 230; *Broadhead v. Insurance Co.*, 23 Hun, 397.

The defendant's complaint of excessive damages ap-

pears to be based on its interpretation of the "three-fourths value clause," which we have shown to be untenable for any purpose in this case. The court instructed, for the defendant, that there could be no recovery, in any event, for a sum greater than the value of the south half of the building destroyed. The testimony placed this value at eight thousand dollars. This sum, with interest from the time when the loss was payable, appears to have been apportioned among the several companies, according to the amounts of the policies respectively issued by them. We see no ground for complaint against this method of adjustment.

Upon a careful examination of the whole record, we find in it no reversible error. The judgment is affirmed, with the concurrence of all the judges.

